PHILLIPS, Circuit Judge,
concurring:
I agree with the majority that the United, States hasn’t waived its sovereign immunity. But I disagree with the majority’s conclusion that the plaintiffs have failed to demonstrate a trust relationship between the Tribes and the United States. The majority frames the precedent as requiring both trust language and language indicating that Congress intended to create ongoing fiduciary duties and finds both lacking here. I can’t agree.
The majority places undue emphasis on the absence of express trust language. See Maj. Op. at 1245-46. But Supreme Court precedent favors function over form. No magic words are necessary for the United States to create a trust with Indian tribes or tribal members. In fact, in United States v. Mitchell (Mitchell I), 445 U.S. 535, 542-45, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), the Court concluded that the use of the words “in trust” was not dispositive. There the Court held that the statute at issue[1] created “only a limited trust relationship between the United States and the allottee” that did not lead to enforceable duties, because the statute did “not unambiguously provide that the United States has undertaken full fiduciary responsibilities as to the management of al *1248 lotted lands.” Id. at 542, 100 S.Ct. 1349. In United States v. Mitchell (Mitchell II), 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), the Court again addressed the difference between form and function in the trust setting:
“[W]here the Federal Government takes on or has control or supervision over tribal monies or properties, the fiduciary relationship normally exists with respect to such monies or properties (unless Congress has provided otherwise) even though nothing is said expressly in the authorizing or underlying statute (or other fundamental document) about a trust fund, or a trust or fiduciary connection.”
Id. at 225, 103 S.Ct. 2961 (alteration in original) (quoting Navajo Tribe of Indians v. United States, 624 F.2d 981, 987 (Ct.Cl.1980)). The inquiry should focus on whether “[a]ll of the necessary elements of a common-law trust are present: a trustee (the United States), a beneficiary (the Indian allottees), and a trust corpus (Indian timber, lands, and funds).” Id.
Similarly, the Court focused on function in United States v. Navajo Nation, 537 U.S. 488, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003). While the Court noted that “no provision of the [Indian Mineral Leasing Act of 1938, 52 Stat. 347, 25 U.S.C. § 396a et seq.,1 or its regulations contains any trust language with respect to coal leasing,” the inquiry did not end there. Navajo Nation, 537 U.S. at 508, 123 S.Ct. 1079 (emphasis in original). Rather, the Court focused on whether Congress gave the United States managerial control over the Indians’ resources. Id. The Court focused on whether the Secretary of the Interior was “assigned a comprehensive managerial role” or “expressly invested with responsibility to secure the needs and best interests of the Indian owner and his heirs.” Id. at 507-08, 123 S.Ct. 1079 (internal quotation marks omitted). Finally, in United States v. White Mountain Apache Tribe, 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003), the court noted that “[wjhere, as in Mitchell II, the relevant sources of substantive law create ‘[a]ll of the necessary elements of a common-law trust,’ there is no need to look elsewhere for the source of a trust relationship.” Id. at 474 n. 3, 123 S.Ct. 1126 (second alteration in original) (citation omitted) (quoting Mitchell II, 463 U.S. at 225, 103 S.Ct. 2961).
Thus, while the existence or absence of trust language is persuasive, it is not dis-positive. The existence of fiduciary obligations and the'presence of common-law trust elements can suffice to create an enforceable trust. Here, the relationship between the United States and the Tribes established by the treaty and the 1866 Appropriations Act has “all of the necessary elements of a common law trust”: a trustee, the United States; a beneficiary, the members of the Tribes; and a trust corpus, the $39,050 appropriated to pay the obligations under the treaty.[2] Mitchell II, 463 U.S. at 225, 103 S.Ct. 2961. Additionally, the United States exercised managerial control over the funds: under the treaty’s express language, the Secretary will pay the Tribe members “in United States securities, animals, goods, provisions, or such other useful articles as may, in the discretion of the Secretary of the Interior, be deemed best adapted to the respective wants and conditions” of the
*1249 Tribe members affected. Treaty Between the United States of America and the Cheyenne and Arrapahoe Tribes of Indians, art. VI, Oct. 14, 1865, 14 Stat. 703, 706. This language is similar to language that the Mitchell II Court found “directly supported] the existence of a fiduciary relationship.” Mitchell II, 463 U.S. at 224, 103 S.Ct. 2961. There, the statute “expressly mandate[d] that sales of timber from Indian trust lands be based upon the Secretary’s consideration of ‘the needs and best interests of the Indian owner and his heirs’ and that proceeds from such sales be paid to owners ‘or disposed of for their benefit.’ ” Id. (quoting 25 U.S.C. § 406(a)). Undeniably, the Secretary here was “expressly invested with responsibility to secure the needs and best interests of the Indian owner and his heirs” under the plain language of the treaty. See Navajo Nation, 537 U.S. at 507-08, 123 S.Ct. 1079 (internal quotation marks omitted). I would find that there is a trust here.

. This statute was the General Allotment Act. of 1887, 24 Stat. 388, as amended, 25 U.S.C. § 331 et seq. See Maj. Op. at 1243-44.

. I disagree with the majority’s classification of the appropriated funds as "a one-time payment.” Maj. Op. at 1246. Here, the money was not appropriated for immediate, direct payment to the qualified tribal members. Rather, Congress appropriated the money to the Secretary to spend on their behalf at his discretion until he used the full amount. Until all of the money appropriated was paid out on behalf of the Tribe members, I believe that the money is still held in trust.